**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Liberty Life Insurance Company, | No. CV 10-2024-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Eric L. Myers; Donald D. Myers and Joan L. Myers; Anne R. Myers; Erin Sarah Stoloff; Kirsten Anne Myers; the Erin Myers Trust dated August 13, 1993; the Kirsten Myers Trust dated August 13, 1993; Brooke Myers Wilson; Sean Edwin Lung, | |
| Defendants. | |

Currently pending before the Court are Defendant Eric Myers's Motion to Dismiss (Doc. 18) and Motion Requesting Appointment of Pro Bono Counsel (Doc. 24) and Plaintiff Liberty Life Insurance Company's Motion to Dismiss Defendant Eric Myers' Counterclaim (Doc. 27). The Court now rules on the Motions.

## **BACKGROUND**

Plaintiff Liberty Life Insurance Company ("Liberty") issued a life insurance policy (the "Policy") on the life of Defendant Eric Myers with a death benefit of $800,000 on July 4, 1989. Eric attended a real estate conference in San Diego in late June, 1991. On Sunday, June 30, 1991, Eric failed to return home to Arizona. Eric's family hired a private investigator to investigate Eric's disappearance, but received no results.

1         On August 14, 1991, Anne Myers filed a petition for divorce from Eric; the Arizona
2 Superior Court dissolved the marriage on March 19, 1992. On August 27, 1991, Donald
3 Myers, Eric's father, petitioned the Arizona Superior Court to be appointed conservator of
4 Eric's estate. On September 17, 1993, Donald was issued Amended Letters of Special
5 Conservatorship authorizing him to execute any and all paperwork necessary to effect a
6 change in beneficiary on the Policy. Donald took the necessary steps to change the Policy
7 beneficiaries to the Erin Myers Trust dated August 16, 1993 ("Erin's Trust") and the Kirsten
8 Myers Trust ("Kirsten's Trust"), collectively the "Trusts." Donald was the Trustee of the
9 Trusts.

10         On December 16, 1996, Donald petitioned the Arizona Superior Court to issue a
11 presumptive death certificate, pursuant to A.R.S. §14-1107, declaring Eric dead. Arizona
12 issued a presumptive death certificate for Eric on March 6, 1997. Donald submitted a proof
13 of loss to Liberty that included the presumptive death certificate. On February 18, 1998,
14 Liberty paid out $870,103.80 under the Policy. Erin's Trust and Kirsten's Trust were funded
15 with $435,051.90 each of the Policy proceeds.

16         Beginning in 2003, Eric sent faxes to Donald's office that went unanswered. From
17 about 2005 to 2007, Eric sent email communications to members of his family. Eric came
18 out of hiding in October of 2007, and all his family members knew at that time that he was
19 alive. He had allowed his family and friends to believe he was dead. Liberty alleges,
20 however, that at least Donald might have known all along that Eric was alive.

21         On January 25, 2008, after Eric's reappearance to his family and friends, Donald
22 authorized and caused the distribution of $159,000 to Erin, Eric's daughter, from the Erin
23 Trust. On January 25, 2008, Donald authorized and caused the distribution of $274,000 to
24 Kirsten, another daughter, from Kirsten's Trust. On April 15, 2009, Erin received a final
25 distribution of $2,143.52 from Erin's Trust; Kirsten received a $1,262.06 final distribution.

26         Liberty filed this action on September 21, 2010 to recover insurance proceeds paid out
27 under the Policy. Liberty named Eric Myers; Donald Myers; Joan Myers, Eric's mother;
28 Anne Myers; Erin Stoloff, Eric's daughter; Kirsten Ruggiano, Eric's other daughter; the Erin

Myers Trust dated August 13, 1993; the Kirsten Myers Trust dated August 13, 1993; Brooke Myers Wilson, Eric's sister; and Sean Lung, Eric's partner/husband as Defendants. Liberty alleges the following Counts: Count One for Declaratory Judgment/Mistake/Constructive Trust; Count Two for Fraud/Extrinsic Fraud; Count Three for Breach of Duty by a Fiduciary; Count Four for Constructive Fraud; Count Five for Conversion; and Count Six for Unjust Enrichment.

## **MYERS'S MOTION TO DISMISS**

Defendant Eric Myers filed an Answer on October 19, 2010 that he labeled an "Answer to Complaint & Motion for Dismissal & Counter Claim." (Doc. 18.) The portion of the omnibus pleading relating to the dismissal reads, in total:

> It is obvious [Plaintiff's counsel] does not have sufficient facts to merit a genuine case (based on factual issues) or a Declaratory Judgment and **THEREFORE**, I, Eric L. Myers, move that this Court dismiss Liberty's Complaint for lack of evidence, failure to state a claim upon which relief can be granted per Federal Rule of Civil Procedure 12(b)(6) due to the error of Liberty not maintaining a business relationship with the proceeds recipients by means of an indemnity agreement to assure restitution covering its decision to ignore the risk of a presumptive life and also because the statute of limitations precludes any further actions on Liberty's mistake made in 1998 when it knew of the risks and did not prudently protect itself and its shareholders.

(Doc. 18 p.26.)

Eric's purported Motion to Dismiss does not specify which claims he believes fail as a matter of law. He does not recite the elements of a single claim. He does not indicate which statutes of limitation apply to the six Counts in the Complaint and whether tolling could apply. Nor does he cite to a single case in support of his "motion." He provides no basis for granting a motion to dismiss, other than his unsupported statute of limitation arguments and his theory that Liberty should have obtained an indemnity agreement from the Trusts before paying out the Policy proceeds. The Court will not grant such a cursory, legally unsupported Motion.

## MOTION TO APPOINT COUNSEL

Eric petitions the Court to appoint a pro bono attorney to represent him in this case. He claims that he does not have the resources to retain legal counsel and that appointment of counsel "will help the case procedurally and help assure that I receive appropriate legal advice and representation." (Doc. 24, p.1.)

There is no constitutional right to appointment of counsel in a civil case. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982). The Court, however, does have the discretion to allow litigants to proceed in forma pauperis and to appoint counsel in "exceptional circumstances." See 28 U.S.C. § 1915; *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). In order to determine whether exceptional circumstances exist, the Court evaluates the petitioner's "'likelihood of success on the merits [and] the ability of the petitioner to articulate his or her claim pro se in light of the complexity of the legal issues involved.'" *Richard v. Harper*, 864 F.2d 85, 87 (9th Cir. 1988)(quoting *Weygant v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). Neither factor is determinative, and the Court must consider both factors before reaching a decision on a request for appointment of counsel. *See Wilborn*, 789 F.2d at 1331.

Having considered both factors, the Court finds that Eric has not demonstrated either a likelihood of success on the merits or that any difficulty he is experiencing in attempting to litigate his case is due to the complexity of the issues involved. Undoubtedly, all legal cases seem complex to a lay person, but this case does not present unusually complex legal issues. The case therefore does not present "exceptional circumstances" requiring the appointment of counsel. The Court will deny the Motion Requesting Appointment of Pro Bono Counsel.

## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

Liberty filed its Motion to Dismiss Eric's Counterclaim on November 4, 2010. (Doc. 27.) Eric's Counterclaim is found in the last paragraph of his omnibus Answer. That paragraph reads:

**FURTHERMORE**, I hereby Counterclaim for relief from

> Liberty for the Invasion of my Privacy in that Liberty, on instructions of [Plaintiff's counsel], placed the advertisement herein pasted on Exhibit "H", in the Prescott Newspaper, The Daily Courier on October 11, 2010. Firstly, this is in direct violation of the Standard Civil Track Initial Order, as stipulated by Judge James A. Tielborg [sic], dated September 22, 2010. The posting is deceptive. It does not identify to the readers, the entity behind the posting nor the purpose of the posting, which is surely to interrogate my friends and acquaintances. This method of data collection, as perpetrated, is an illegal intrusion into my personal life. For damages, I beseech the Court to Order the Plaintiff to cease any further efforts to delve into my personal life.

(Doc. 18, p. 26.) The Daily Courier advertisement referenced in the Counterclaim reads, "Seeking Any Information SEEKING ANY INFORMATION on the whereabouts of Eric Lillevig Myers from June 30, 1991 through the present. Anyone with information is encouraged to send an email to informationonelm@gmail.com" (Doc. 18, Ex. H.)

The Court may dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.* Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could

satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95(3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Eric alleges a Counterclaim for invasion of privacy. Arizona has adopted the Restatement Second of Tort's four-part classification of the tort of invasion of privacy. *Godbehere v. Phoenix Newspapers*, 783 P.2d 781, 784 (Ariz. 1989); *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997). The following four claims fall under the invasion of privacy tort: 1) intrusion on seclusion or private affairs; 2) public disclosure of private facts; 3) publicity placing the plaintiff in a false light in the public eye; and 4) appropriation of the plaintiff's name or likeness for the defendant's advantage. *Godbehere*, 783 P.2d at 784. Only the first three of those claims could apply here.

The Restatement describes the tort of intrusion upon seclusion as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hart*, 947 P.2d at 853 (citing Restatement (Second) of Torts §652B (1977)). The Comments to the Restatement further define the contours of the tort:

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents . . .

Restatement (Second) of Torts §652B cmt. b (1977). The placement of an advertisement in a newspaper inquiring about Eric's whereabouts does not constitute the sort of intrusion upon seclusion described above. The investigator did not force his way into Eric's home or any other place where Eric had an expectation of privacy, did not eavesdrop or spy on Eric, did not illegally intercept his emails or mail, and did not engage in any type of similar activity. To the extent Eric attempts to state a claim for intrusion upon seclusion, that claim fails.

Nor has Eric sufficiently alleged a claim for publicity given to private life. The Restatement provides that "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts §652D (1977). The advertisement did not disclose any facts about Eric. Instead, it sought facts about his life. The ad therefore cannot serve as a basis for a publicity given to private life claim.

Similarly, any attempt at a false light claim fails as a matter of law because the advertisement did not place Eric in any light whatsoever, let alone a false light. The

Restatement creates a cause of action for publicity placing a person in false light where:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts §652E (1977). Again, the advertisement did not portray Eric in any way because it said nothing about him. The ad simply solicited information about him.

Because the advertisement seeking information about Eric's whereabouts does not satisfy the criteria for intrusion upon seclusion, unreasonable publicity, or false light, Eric failed to state a claim for invasion of privacy. The Court therefore grants Plaintiff's Motion to Dismiss the Counterclaim.

Accordingly,

**IT IS ORDERED** DENYING Defendant Eric Myers's Motion for Dismissal (Doc. 18).

**IT IS FURTHER ORDERED** DENYING Defendant Eric Myers's Motion Requesting Appointment of Pro Bono Counsel (Doc. 24).

**IT IS FURTHER ORDERED** GRANTING Plaintiff Liberty Life Insurance Company's Motion to Dismiss Defendant Eric Myers' Counterclaim (Doc. 27).

DATED this 1st day of August, 2011.

_____
James A. Teilborg
United States District Judge